**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

ROBERT EARL MYERS
HAZEL LOLA MYERS

        Debtors

Case No.  07-34148

**MEMORANDUM ON OBJECTION OF CITIFINANCIAL
AUTO CORPORATION TO CONFIRMATION OF CHAPTER 13
PLAN AND DEBTORS' OBJECTION TO PROOF OF CLAIM
OF CITIFINANCIAL AUTO CORPORATION**

**APPEARANCES:**  ROBERT R. REXRODE, ESQ.
  601 Concord Street, S.W.
  Suite 106
  Knoxville, Tennessee  37919
  Attorney for Debtors

  WILLIAMS & PROCHASKA, P.C.
  Victoria A. Ferraro, Esq.
  401 Church Street
  Suite 2600
  Nashville, Tennessee  37219
  Attorneys for CitiFinancial Auto Corporation

  GWENDOLYN M. KERNEY, ESQ.
  Post Office Box 228
  Knoxville, Tennessee  37901-0227
  Chapter 13 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

The following contested matters are before the court: (1) the Objection of CitiFinancial Auto Corporation to Confirmation of Chapter 13 Plan (Objection to Confirmation) filed on January 9, 2008, by CitiFinancial Auto Corporation (CitiFinancial); and (2) the Debtor's [sic] Objection to Proof of Claim of CitiFinancial Auto Corporation (Objection to Claim) filed by the Debtors on February 22, 2008.

An evidentiary hearing was held on March 12, 2008. The record before the court consists of three exhibits[1] introduced into evidence and the testimony of the Debtor, Robert E. Myers.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O) (2005).

I

On April 30, 2007, the Debtor, Robert E. Myers (Debtor), executed a Retail Installment Sale Contract - Simple Finance Charge (Retail Installment Contract), evidencing his purchase and financing of a 2007 Mazda B3000 truck (Mazda) from Twin City Mazda for $21,389.00, which included the $19,700.00 selling price of the Mazda, $690.50 in sales tax, $585.00 in gap insurance, $14.50 in license fees, and a $399.00 customer service fee to Twin City Mazda. *See* TRIAL EX. 3. The Retail Installment Contract, which was assigned to CitiFinancial, granted a security interest in the Mazda to secure the financed debt. As part of the transaction, the Debtor traded-in a 2005 Kia Optima (Optima) and was given a trade-in allowance by Twin City Mazda of $11,760.00, which

---

[1] The Debtor entered into evidence as Trial Exhibit 1 a magnified copy of the Retail Purchase Order for Motor Vehicle between Twin City Mazda and the Debtor. This identical document with a page entitled "Terms and Conditions" appended thereto was also entered into evidence as Trial Exhibit 2. *Compare* TRIAL EX. 1 *with* TRIAL EX. 2.

equaled the payoff on the Optima. *See* TRIAL EX. 3. To complete the sale of the Mazda, Twin City Mazda paid the $11,760.00 owed on the Optima to the lienholder. *See* TRIAL EX. 3.

The Debtors filed the Voluntary Petition commencing their Chapter 13 bankruptcy case on November 30, 2007. On December 7, 2007, CitiFinancial filed a secured claim in the amount of $21,739.35 plus 16.99% interest, listing the Mazda as collateral and attaching thereto the Retail Installment Contract and a Tennessee Certificate of Title issued May 15, 2007, listing CitiFinancial Auto as the first lienholder. TRIAL EX. 3.

The Debtors' Chapter 13 plan, filed on November 30, 2007, proposes monthly payments to the Chapter 13 Trustee of $532.00 for 36 months, plus all tax refunds owing the Debtors over the life of the plan in excess of $500.00, resulting in an anticipated dividend of 20-70% to nonpriority unsecured creditors. With respect to CitiFinancial, the Debtors propose to cramdown its secured claim pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) (2005) to the value of the Mazda, listed by the Debtors at $7,940.00, to be paid in monthly installments of $241.55 plus 6% interest. Conversely, CitiFinancial contends that payment of its secured claim is governed by the "hanging paragraph" at 11 U.S.C. § 1325(a) (2005) and that the Debtors may not resort to cramdown but must pay its secured claim in the amount filed, $21,739.35. The Debtors filed a response to the Objection to Confirmation, arguing that because the Retail Installment Contract included "negative equity" financed by CitiFinancial, CitiFinancial's claim is not secured by a purchase money security interest in the Mazda thus making the "hanging paragraph" inapplicable.

The court held a preliminary hearing on the Objection to Confirmation on January 30, 2008, entering an Order on February 4, 2008, setting the matter for trial and defining the issue as follows:

> Whether the Debtors' proposed cramdown of CitiFinancial Auto Corporation's secured claim, which is secured by a 2007 Mazda B3000, is appropriate under 11 U.S.C. § 1325(a)(5)(B) (2005), or whether CitiFinancial Auto Corporation's secured claim is controlled by the provisions of the "hanging paragraph" in 11 U.S.C. § 1325(a) (2005). Specifically, does the "negative equity" financed by CitiFinancial Auto Corporation upon the Debtors' purchase of the 2007 Mazda B3000 eliminate the transaction as a "purchase money security interest" under the "hanging paragraph"?

In other words, the question is whether the trade-in of the Optima caused CitiFinancial to finance "negative equity" and if so, whether that fact defeats CitiFinancial's claim to a purchase money security interest in the Mazda.[2]

On February 22, 2008, the Debtors filed their Objection to Claim, arguing that CitiFinancial's claim was not fully secured due to the "negative equity" financed in the Retail Installment Contract and that CitiFinancial omitted the "Twin City Mazda Retail Purchase Order" from its supporting documentation attached to the proof of claim filed on December 7, 2007. The Objection to Claim was set for trial along with the Objection to Confirmation on March 12, 2008.

## II

This issue arises under 11 U.S.C. § 1325(a), which provides, in material part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

---

[2] At the trial on March 12, 2008, the Debtors' attorney, for the first time, attempted to raise the issue of whether the inclusion of gap insurance in the Retail Installment Contract defeated the purchase money security interest claimed by CitiFinancial. Because that issue was not raised by the Debtors at the preliminary hearing and because no objection was filed to the February 4, 2008 scheduling Order, the court ruled that it would not consider this issue.

4

> . . . .
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
> . . . .
>
> (B) . . . .
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]
>
> . . . .
>
> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period[3]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.][4]

11 U.S.C. § 1325(a).

With regard to § 1325(a)(*), the parties stipulated prior to commencement of the trial that the Mazda was purchased within the 910-day period preceding the date of the filing of the Debtors' Chapter 13 petition and that the Mazda is a motor vehicle acquired for the personal use of the Debtors. The parties also do not dispute that in the absence of the "negative equity" issue, CitiFinancial's claim would be secured by a purchase money security interest in the Mazda. To state it another way, should the court determine that CitiFinancial did not finance "negative equity" with

---

[3] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

[4] For the purposes of this Memorandum, the court will hereinafter refer to the "hanging paragraph" as § 1325(a)(*).

regard to the Optima trade-in vehicle, CitiFinancial's claim is secured by a purchase money security interest in the Mazda.[5]

Judge Stinnett defines "negative equity" as "an unsecured debt owed by the buyer that must be paid to complete the debtor's purchase of a new car." *In re Gray*, 382 B.R. 438, 440 (Bankr. E.D. Tenn. 2008). In *Gray*, one of the debtors purchased a 2005 Saturn prior to bankruptcy and was allowed a trade-in value on her old car of $10,100.50. The old car secured a debt of $14,362.98, thus resulting in "negative equity" of $4,261.98. In addition to the cash price of the Saturn, the debt financed by the creditor included the "negative equity." *See Gray*, 382 B.R. at 440.

Here, as clearly established by the Retail Installment Contract, there is no "negative equity," and the absence of "negative equity" defeats the Debtors' argument that the Retail Installment Contract did not grant CitiFinancial a purchase money security interest in the Mazda. "Equity" is defined as "the difference between the property value and the total amount of liens against it." *In re Planned Sys., Inc.*, 78 B.R. 852, 862 n.10 (Bankr. S.D. Ohio 1987). Specific to this case, that figure is determined by taking the difference between the money still owed by the Debtors on the Optima and subtracting the value that the Debtors received from the dealership for the Optima to arrive at the amount of equity, either positive or negative, in connection with the transaction. The Debtors owed $11,760.00 on the Optima, and they were given value in the form of a trade-in credit

---

[5] A security interest is a purchase money security interest if it secures a purchase money obligation. A purchase money obligation is (1) an obligation incurred as all or part of the price of the collateral, or (2) an obligation for value given to enable the obligor to acquire rights in or the use of the collateral, provided the value was used for that purpose. TENN. CODE ANN. § 47-9-103(a)(1), (a)(2) & (b)(1).

*In re Gray*, 382 B.R. 438, 440 (Bankr. E.D. Tenn. 2008).

in the amount of $11,760.00. Since subtracting the value received from the amount owed yields zero, it stands to reason that while there is no positive equity, there is also no "negative equity."

Because no "negative equity" was financed by CitiFinancial through the Retail Installment Contract, its purchase money security interest remains intact.[6] As the parties stipulate that all other elements of the "hanging paragraph" are present, the court finds that 11 U.S.C. § 1325(a)(*) applies. The Debtors may not cramdown CitiFinancial's claim, and its Objection to Confirmation shall be sustained and confirmation of the Debtors' plan will be denied. The court shall, however, provide the Debtors time to file an amended plan providing for the treatment of CitiFinancial's secured claim in the manner required by § 1325(a)(*).

### III

Also before the court is the Debtors' Objection to Claim. "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). While any party in interest may object to a filed claim, *see* 11 U.S.C. § 502(a), the objecting party bears the burden of "presenting evidence to rebut or cast doubt upon the creditor's proof of claim . . . [and] produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency[,] . . . [at which point,] the burden reverts to the claimant to prove the validity of the claim . . . by a preponderance of the evidence." *In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999) (quoting

---

[6] Because CitiFinancial did not finance "negative equity" in relation to the Debtors' purchase of the Mazda, the court need not concern itself with whether "negative equity" destroys the purchase money security interest characterization of CitiFinancial's claim under Tennessee law.

*Galloway v. Long Beach Mortgage Co. (In re Galloway)*, 220 B.R. 236, 243-44; *see also In re Walsh*, 264 B.R. 482, 484 (Bankr. N.D. Ohio 2001); *Namer v. Sentinel Trust Co. (In re AVN Corp.)*, 248 B.R. 540, 547 (Bankr. W.D. Tenn. 2000). The Debtors objected to CitiFinancial's claim on the basis that it did not attach the Retail Purchase Order for Motor Vehicle, introduced into evidence as Trial Exhibits 1 and 2, to its proof of claim.

Rule 3001 of the Federal Rules of Bankruptcy Procedure, entitled "Proof of Claim" governs the filing of proofs of claim. Pursuant to this Rule, if a claim is based upon a writing, "the original or a duplicate shall be filed with the proof of claim." FED. R. BANKR. P. 3001(c). For claims evidencing a perfected security interest, the Rule states "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." FED. R. BANKR. P. 3001(d).

As with issues determining what constitutes a purchase money security interest, perfection of a security interest in a motor vehicle under Tennessee law is governed by Tennessee law. *Hendon v. Gen. Motors Acceptance Corp. (In re B & B Utils., Inc.)*, 208 B.R. 417, 421 (Bankr. E.D. Tenn. 1997). In Tennessee, liens on motor vehicles are perfected by notation of the name and address of the lienholder on the certificate of title. *See* TENN. CODE ANN. § 55-3-126 (Supp. 2007). CitiFinancial filed its proof of claim on December 7, 2007, and attached thereto the Retail Installment Contract dated April 30, 2007, and a Certificate of Title issued by the State of Tennessee on May 15, 2007, evidencing CitiFinancial as the first lienholder of the Mazda and April 30, 2007, as the "Date of First Security Interest." These attachments not only satisfy the requirements of Rule 3001(c) to sufficiently evidence the basis of CitiFinancial's claim, but also satisfy the requirements

of Rule 3001(d) to evidence CitiFinancial's valid and perfected security interest in the Mazda. Because the Debtors provided no evidence to rebut the validity of CitiFinancial's claim, they have not met their burden of proof to that end. As such, the Objection to Claim is without merit and shall be overruled.

An order consistent with this Memorandum will be entered.


FILED:  March 26, 2008

                            BY THE COURT

                            */s/  RICHARD STAIR, JR.*

                            RICHARD STAIR, JR.
                            UNITED STATES BANKRUPTCY JUDGE